UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: BRENDA PRICE,                                       No. 11-05-10321 MS

Debtor.

## ORDER DENYING DEBTOR'S MOTION FOR POST-CONFIRMATION MODIFICATION OF CHAPTER 11 PLAN

THIS MATTER is before the Court on the Debtor's motion to modify confirmed Chapter 11 Plan ("Motion"). *See* Docket # 233. Creditors JP Morgan Chase ("Chase") and America's Wholesale Lender ("AWL") objected to the Motion, asserting, among other things, that Debtor may not seek to modify her plan post-confirmation because her confirmed plan has been substantially consummated, and that the Debtor has failed to demonstrate that the plan as modified is feasible. *See* Docket # 241 and Docket # 241. The Court held a final hearing on the Motion on April 17, 2008 and took the matter under advisement. After considering the Motion in light of the evidence presented at the final hearing and the statutory restrictions on post-confirmation modifications contained in 11 U.S.C. § 1127(b), the Court finds that the Debtor has failed to meet her burden of showing that she is entitled to modify her confirmed plan. Accordingly, the Court will deny the Motion and in connection therewith FINDS:

1. Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 19, 2005.[1]

2. Debtor owns two parcels of real property located in Taos, New Mexico, commonly known as 110A Mabel Dodge Lane ("Property A") and 110B Mabel Dodge Lane ("Property B").

---

[1] The Debtor's bankruptcy case was filed prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

1

Property B consists of a contiguous parcel of real property that wraps around Property A.

3. The Debtor operates Property A and Property B as a bed and breakfast inn. Property A has ten rooms. There are five structures situated on Property B, including a guesthouse and studio located on the southern portion of Property B; a larger residential structure and a studio connected to a pottery shed located on the northern portion of Property B; and a small structure used as an innkeeper's quarters located on the piece of property that connects the northern and southern portions of Property B.

4. Chase holds a note and mortgage secured by Property B. The principal amount of Chase's note is $650,000.00. The note has an adjustable interest rate, adjustable every five years. The current interest rate is 5.125%.

5. AWL holds a note and mortgage secured by Property A. The principal amount of AWL's note is $630,000.00.

6. Debtor filed her Chapter 11 plan and disclosure statement on January 23, 2006. *See* Debtor's Disclosure Statement and Chapter 11 Plan Dated January 22, 2006 ("Plan") - Docket # 99.

7. The Plan contemplates that Property A and Property B, or a portion of such properties may be sold to pay creditors under the Plan. *See, e.g.,* Plan, pp. 20, regarding treatment of Article V, Class I, Section I : "Debtor shall pay all pre- and post-petition arrears from proceeds of the sale of the Business Property which may be sold in connection with 110B Mabel Dodge Lane, Taos, New Mexico, or possibly subdivided further and be sold as three parcels . . ." and treatment of AWL: "Payments can begin only when the anticipated recovery against the pending lawsuit funds making her whole again or until such time as she can rebuild

2

working capital, sell part of [the] property, or obtain a line of credit.").

8. Debtor's Plan was confirmed on May 19, 2006. *See* Order Confirming Debtor's Disclosure Statement and Chapter 11 Plan dated January 22, 2006 ("Confirmation Order") - Docket # 178.

9. The Confirmation Order required the Debtor to make adequate protection payments in "the form of monthly mortgage payments pursuant to the terms of the underlying notes and mortgages to JP Morgan Chase, Chase Home Finance LLC, and America's Wholesale Lender beginning April 1, 2007 and continuing until the property is sold, debts satisfied and/or until December 31, 2008." The Confirmation Order provided further that the automatic stay would be lifted as to Chase and AWL in the event all pre-petition and post-petition arrears are not paid by December 31, 2008. *Id.*

10. Debtor listed Property A and Property B for sale in 2005, but took both properties off the market in October of 2006. Neither Property A nor Property B were listed for sale from October 2006 until January of 2008, when the Debtor listed for sale the northern portion of Property B at a price of $1,395,000.00. Debtor received no offers to purchase Property A or Property B when they were listed previously, and has not received any purchase offers since re-listing the northern portion of Property B.

11. To date, Property B has not been subdivided.

12. Since confirmation of Debtor's Plan, Debtor experienced a significant drop in her income from operation of her bed and breakfast which she discovered in July of 2007 was likely attributable to problems with her business website that arose in October of 2006.

13. Debtor testified that she believes the current value of Property A is $2,500,000.00,

3

Case 05-10321-j11    Doc 273    Filed 05/08/08    Entered 05/08/08 14:27:20 Page 3 of 9

and that Property B is worth between $1,800,000.00 and $2,000,000.00.

14. Ed Adams, an appraiser retained by Chase to assess the value of the properties, appraised Property B at $975,000.00. Mr. Adams separately appraised the portion of Property B the Debtor has listed for sale. He values the northern portion of Property B at $700,000.00.

15. Debtor has made some payments called for under the confirmed plan, including the adequate protection payments due to Chase from April through December 2007, but stopped making the adequate protection payments required under the Confirmation Order in January of 2008.

16. Debtor seeks to modify her confirmed Chapter 11 plan by suspending the adequate protection payments required under the Confirmation Order through December 31, 2010 in order to allow her to market and sell Property B and/or Property A, or a portion thereof, and use the proceeds from the sale(s) to cure all arrearages under the notes and mortgages to Chase and AWL.

17. Post-confirmation modification of a Chapter 11 plan is governed by 11 U.S.C. § 1127(b), which provides:

> The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.

11 U.S.C. § 1127(b).

18. "[S]ubstantial consummation" means --
    (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
    (B) assumption by the debtor or by the successor to the debtor under the

> > plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
> > (C) commencement of distribution under the plan.

> 11 U.S.C. § 1101(2).

19. "Substantial consummation" under 11 U.S.C. § 1101(2) requires the presence of all all three elements. *Matter of Potts,* 188 B.R. 575, 579 (Bankr.N.D.Ind. 1995)(citations omitted); *In re Scotland Guard Services, Inc.,* 139 B.R. 264, 265 (Bankr.D.P.R. 1991)(citations omitted). A debtor seeking to modify a confirmed plan bears the burden of showing that substantial consummation of the plan has not occurred. *Scotland Guard,* 139 B.R. at 266.

20. The Debtor has assumed management of all the property to be dealt with by the Plan, and some distributions to creditors, including all payments to Class VIII creditors under the Plan, have been made. Sub-parts (B) and (C) have therefore been satisfied.

21. Chase contends that subsection (A) has also been satisfied since the Plan and Confirmation Order do not *require* the sale or transfer of Property A and/or Property B, reasoning that subsection (A) either does not apply, or has otherwise been satisfied.[2] Debtor counters that because the Plan clearly contemplates the sale of Property A and/or Property if necessary to fund the Plan, the Plan has not been substantially consummated within the meaning of 11 U.S.C. § 1101(2).

22. Whether "substantial consummation" has occurred depends upon the facts and

---

[2]*See Antiquities of Nevada, Inc. v. Bala Cynwyd Corp. (In re Antiquities of Nevada, Inc.),* 173 B.R. 926, 930 (9th Cir. BAP 1994)(concluding that substantial consummation barred modification when debtor had assumed management and control of the property administered under the plan, distributions had commenced under the plan, and the plan did not provide for any transfers of non-cash property); *Scotland Guard,* 139 B.R. at 266 (finding that plan which did not provide for any transfer of property was substantially consummated where debtor was operating the business and distributions under the plan had commenced).

5

circumstances of each case. *Antiquities of Nevada,* 173 B.R. at 928 (citation omitted); *Potts,* 188 B.R. at 579 (citing *In re Stevenson,* 148 B.R. 592, 596 (D.Idaho 1992)(remaining citation omitted).

23. Courts are divided as to whether sub-part (A) requires that a majority of all payments called for under the plan be completed, or whether sub-part (A) applies only to distributions of property intended to be made at or near the plan's effective date. *See Antiquities,* 173 B.R. at 929-930 (discussing the two approaches to sub-part (A)).[3]  This Court agrees that the better approach is that cash payments under the plan fall within sub-part (C), and that only non-cash transfers of property that the plan contemplates will be completed at or near the plan's effective date fall within sub-part (A). *See Potts,* 188 B.R. at 580-81 (adopting interpretation of § 1102 that does not require all or substantially all of the debtors' property to be sold or turned over to creditors in order to satisfy sub-part (A)). *See also,* 7 Collier on Bankruptcy, ¶1101.02[3][b] (Alan N. Resnick and Henry J. Sommer, eds. 15th ed. rev. 2008)(concluding that this interpretation is better "because it harmonizes all of the provisions of section 1102(2) and . . . better preserves the expectations of the parties to a confirmed plan.").

24. Under this construction of 11 U.S.C. § 1102, a debtor will not be allowed to modify

---

[3]One approach requires that a majority of both distributions or payments to creditors *and* transfers of property contemplated by the plan must be completed before a plan is substantially consummated within the meaning of 11 U.S.C. § 1102. *See, e.g., In re Heatron, Inc.,* 34 B.R. 526 (Bankr.W.D.Mo. 1983). The other approach considers only transfers of non-cash property under sub-part (A), reasoning that payments of cash under the plan constitute "distributions" which fall within sub-part (B). *See In re Hayball Trucking, Inc.,* 67 B.R. 681, 684 (Bankr.E.D.Mich. 1986). *See also Potts,* 188 B.R. at 579 (discussing the two schools of thought regarding substantial consummation: one "which considers the distributions made to creditor along with transfers of property proposed to be transferred, requiring more than a mere preponderance of both distributions and transfers before 'substantial consummation' occurs"; and the other which considers distributions only under subpart (C), and property transfers under subpart (A)).

a plan which calls for sales of property over a significant period of time that extends well beyond the plan's effective date.[4] But because one of the primary purposes and benefits of plan confirmation is the finality of the agreement between the debtor and creditors, the Court finds that such a result does not unduly frustrate a debtor's ability to modify a confirmed chapter 11 plan.[5]

24. Based on the Court's construction of 11 U.S.C. § 1102 and the facts of this case, the Court finds that substantial consummation has already occurred. Distributions under the Plan have commenced, and while neither Property A nor Property B have been sold, the Plan did not require the sale of such properties unless it became necessary to do so. Nor did the confirmed plan call for transfers of other non-cash property at or near the plan's effective date.[6] The Debtor candidly admitted that selling Property A and Property B was in her view the "worst case scenario," and she still hopes to retain Property A and a portion of Property B even if she is allowed to modify the Plan. Two years have passed since the entry of the Confirmation Order. The Debtor has continued to operate her business with the hope that neither Property A nor

---

[4] *See Potts,* 188 B.R. at 580 (concluding "that distribution[s] to creditors over a period of time are not the types of transfers of property proposed by the plan to be transferred contemplated in subsection (A)."). *See also, Carter v. Peoples Bank and Trust Co. (In re BNW, Inc.),* 201 B.R. 838, 846 (Bankr.S.D.Ala. 1996)(stating that "[g]enerally, substantial consummation will occur on the date that the confirmation order becomes final.").

[5] *See In re H & L Developers, Inc.,* 178 B.R. 77, 81 (Bankr.E.D.Pa. 1994) (stating that "the purpose of the substantial consummation requirement is to provide some finality to bankruptcy proceedings . . .").

[6] The Plan did not expressly designate an "effective date" separate from the date of confirmation, nor does the Plan define the term "effective date." The code does not define the phrase "effective date" for purposes of chapter 11 plans. Thus a debtor can designate an effective date that is some time after the confirmation date, but, generally "the effective date of the plan should be reasonably close to the date of the confirmation hearing." *In re Jones,* 32 B.R. 951, 959 n. 13 (Bankr.D.Utah 1983).

7

Property B would have to be sold to fund the remaining payments called for under the confirmed Plan. She made the adequate protection payments to Chase as required under the Confirmation Order from April 2007 through December 2007. These facts demonstrate that substantial consummation of the confirmed plan has already occurred. Consequently, the Debtor may not seek to modify her confirmed plan pursuant to 11 U.S.C. § 1127(b).

25. Even if the Court were to assume there has not been substantial consummation[7], the Court finds that the Debtor has failed to otherwise meet her burden of showing that "circumstances warrant such modification." 11 U.S.C. § 1127(b). More than two years have passed since the date Debtor's Plan was confirmed. She has had ample time to attempt to market and sell Property A and/or Property B. Nothing has been presented to the Court to indicate that market conditions are likely to change substantially over the next two years which would support an extension of the term of the confirmed Plan. Debtor voluntarily took the properties off the market, and while the problems with her business website contributed to the decline in her business income, she did not discover or take action to address the problems for more than six months.[8] By seeking to modify at this stage in the proceedings, Debtor is simply asking her

---

[7] *Cf. In re Lacy,* 297 B.R. 786, 803 (Bankr.D.Colo. 2003), *rev'd on other grounds,* 304 B.R. 439 (D.Colo. 2004)(determining within the context of a post-confirmation motion to convert that "substantial confirmation" had not occurred where the plan required the debtor to sell his property for the benefit of creditors, and debtor had not yet sold the property).

[8] *But compare Federal Land Bank of Louisville v. Gene Dunavant and Son Dairy (In re Gene Dunavant and Son Dairy),* 75 B.R. 328 (M.D.Tenn. 1987) (allowing post-confirmation modification, finding that substantial consummation had not occurred when plan provided for transfer of dairy, but conveyance documents and purchase price remained in escrow and debtor remained in possession of the property, and where debtor's revenues had declined through no fault of the debtor but so seriously as to render plan unworkable), *with In re Modern Steel Treating Co.,* 130 B.R. 60, 65 (Bankr.N.D.Ill. 1991), *aff'd,* 1992 WL 82966 (N.D.Ill. 1992) (finding that substantial consummation had not occurred, but that plan could not be modified,

creditors to wait even longer for a result she originally promised to deliver no later than December 31, 2008.[9] In short, Debtor has failed to demonstrate sufficient circumstances to support a post-confirmation modification.

WHEREFORE, IT IS HEREBY ORDERED that the Motion is DENIED.

/s/ Mark B. McFeeley
_____
MARK B. McFEELEY
United States Bankruptcy Judge

Date entered on docket: May 8, 2008

COPY TO:

Charles R. Hughson
Attorney for Debtor
6709 Academy NE, Suite A
Albuquerque, NM 87109

Michael K Daniels
Attorney for America's Wholesale Lender
PO Box 1640
Albuquerque, NM 87103-1640

Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103

Sharon Hankla
Karen Howden Weaver
Attorneys for JP Morgan Chase
13725 Struthers Road, Suite 201
Colorado Springs, CO 80921

---

noting that "inability to fund the Plan is not a reason for modification under § 1127(b).").

[9]The Plan also references a cut-off date of January 1, 2009 for curing arrears to Chase.